UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| KYLE UST, | |
|---|---|
| *Plaintiff*, | Civil Action No. 17-13051 |
| v. | OPINION |
| THE BOROUGH OF ENGLEWOOD CLIFFS, et al., | |
| *Defendants*. | |

**ARLEO, United States District Judge**

**THIS MATTER** comes before the Court on three separate motions brought by Defendants the Borough of Englewood Cliffs ("the Borough"), the Englewood Cliffs Police Department ("the Police Department"), Scott Mura ("Mura"), and Carrol McMorrow ("McMorrow") (all together, "Defendants"), ECF Nos. 5, 6, 7, to dismiss Plaintiff Kyle Ust's ("Plaintiff" or "Ust") Revised Second Amended Complaint ("RSAC"). Notice of Removal, Ex. 6, ECF No. 1-1. For the reasons set forth below, the three Motions to Dismiss are **GRANTED.**

**I.  Background**

This matter arises out of Plaintiff's employment with the Englewood Cliffs Police Department. Plaintiff has been employed by the Police Department as a patrol officer since March 2012. RSAC ¶ 8. He brings this action against the Police Department, the Borough, Lieutenant Mura (his supervisor), and Carrol McMorrow (the president of the Borough Council), alleging that he faced retaliation and suffered a hostile work environment in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1 et seq., and that he was

1

deprived of his due process and equal protection rights under the U.S. Constitution and the New Jersey Constitution pursuant to the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-2.

Plaintiff alleges that in late 2015, he noticed that Mura began exhibiting "behavioral problems" including "sleeping at the control desk" and "slurred speech." RSAC ¶¶ 17, 19. Plaintiff alleges that these behavioral changes followed Mura's return from a nine-month medical leave for back surgery. Id. ¶¶ 18, 20. Plaintiff alleges that on or about November 23, 2015, he and other officers wrote letters to the chief of police, Chief Cioffi, regarding Mura's "behavioral problems." Id. ¶ 23. Plaintiff alleges that Mura learned of this letter and "retaliated" against him. Id. ¶ 26. Plaintiff states that this retaliation was "continual, severe, pervasive, and . . . constant." Id. ¶ 27. Plaintiff alleges exactly two incidents of purported retaliation to support this claim: first, that on or about January 26, 2016, Mura brought his knife collection—which included a harpoon— to work "and swung them in a dangerous and threatening manner" (the "Knife Incident"), and second, that on February 23, 2016, Mura filed "a false Internal Affairs Complaint" against Plaintiff. Id. ¶¶ 28, 32. Plaintiff also alleges that Mura "harass[ed] and retaliate[d] against [Plaintiff] by continuously following him around and reporting him for minor infractions" throughout March 2016, and that on March 26, 2016, Mura issued an "Order Detail" that prevented Plaintiff from seeking a reassignment without Mura's permission. Id. ¶¶ 37, 46-48. Plaintiff claims that around this time, he was "diagnosed with anxiety due to the hostile work environment" and that his preexisting "speech impediment began to worsen as the anxiety and stress increased." Id. ¶¶ 50-51.

Plaintiff claims that the Borough and the Police Department failed to take any action in response to his complaints about Mura. Id. ¶¶ 42, 53-58, 77-82. He claims that this inaction exacerbated his harassment. Id. ¶102. Moreover, he alleges that another higher up at the Police

2

Department continued Mura's "harassment and retaliation." Id. ¶74. He claims that on June 22, 2016, Deputy Police Chief Michael McMorrow (and husband of Defendant McMorrow) threatened to discipline Plaintiff for drinking coffee outside of his police cruiser during traffic detail, and ordered all officers not to consume food or beverages outside their motor vehicles while on duty. Id. ¶¶ 74-76. Plaintiff claims that he suffered additional retaliation from "Lieutenant Mura's political allies Mayor Kranjac[1] and Council President McMorrow." Id. ¶ 31. Specifically, he alleges that on or about June 5, 2017, McMorrow "dr[ove] by [him] watching [him] and harassing [him] while [he] worked in an attempt to further intimidate [him]." Id. ¶ 87. Plaintiff also alleges that McMorrow filed a new internal affairs complaint against Plaintiff "for allegedly 'following her.'"[2] Id. ¶ 88.

Plaintiff raises two final allegations in his Revised Second Amended Complaint. First, he claims that he was placed on administrative leave from March 27, 2017 to March 31, 2017. Id. ¶¶ 83-85. Plaintiff attaches a March 27, 2017 letter from attorneys for the Borough to Chief Cioffi directing Chief Cioffi to place Plaintiff on "administrative leave with pay" pending the results of a health evaluation "in light of the contents of [Plaintiff's] recently filed civil litigation against the Borough in which he claims that he suffered [severe emotional distress and anxiety]." Id., Ex. C, ECF No. 1-1. Second, Plaintiff claims that "[d]ue to the ongoing hostile work environment," he applied for a position as a county prosecutor detective, and that during a May 11, 2016 interview

---

[1] Major Kranjac is not a party to the instant action but was named as a defendant in a previous iteration of this lawsuit. See Section II, infra.

[2] Plaintiff references Defendant McMorrow on another occasion in his Revised Second Amended Complaint. He claims that the Police Department held a meeting with Mayor Kranjac and Deputy Chief McMorrow on May 2, 2016 and that at that meeting, Plaintiff stated that he had recently observed Mura speaking with Defendant McMorrow in a car. RSAC ¶¶ 66-68. Plaintiff claims that, on May 3, 2016, Deputy Chief McMorrow called Plaintiff into his office and directed Plaintiff to meet with his wife, Defendant McMorrow. Id. ¶ 69. Plaintiff states he declined to do so. Id. ¶ 71.

3

for that position, he was "questioned about the [internal affairs c]omplaint Lieutenant Mura had filed against him." RSAC ¶¶ 94-96. Plaintiff was not offered the position and claims that "the false [internal affairs c]omplaint caused [him] to be rejected from the new job." Id. ¶ 97.

Plaintiff's Revised Second Amended Complaint contains three counts: (1) for retaliation in violation of CEPA, id. ¶¶ 106-115, (2) for hostile work environment in violation of CEPA, id. ¶¶ 116-121, and (3) for violations of the NJCRA, id. ¶¶ 122-129.

## II. Procedural History

The procedural history of this case is complex. On March 6, 2017, Plaintiff filed an initial complaint in state court which named as defendants the Borough, the Police Department, Mura, Mayor Mario Kranjac, the mayor and council of the Borough, and John Does 1-10. Notice of Removal, Ex. 1, ECF No. 1. That complaint contained eight state law claims, including two brought under CEPA. Id., Ex. 1. On April 25, 2017, all defendants aside from Mura moved to dismiss the complaint. Id. On May 17, 2017, Plaintiff sought leave to file an amended complaint against the same defendants which contained seven state law claims, including, again, two brought under CEPA—for retaliation and for hostile work environment. Id., Ex. 2. On July 20, 2017, the Honorable Rachelle L. Harz, J.S.C., entered a decision and order granting Plaintiff's motion to amend his complaint and dismissing the amended complaint without prejudice as to all defendants except for Mura. Id., Ex. 3.

On September 22, 2017, the Honorable Christine A. Farrington, J.S.C. entered an order dismissing the entire matter without prejudice for lack of prosecution. Id., Ex. 4. On October 2, 2017, Plaintiff moved to restore his complaint and to file a second amended complaint. Id. On December 1, 2017, Judge Farrington entered an order granting Plaintiff's motion and permitting him to file an amended complaint as to Mura and the previously dismissed defendants. Id., Ex. 5.

4

Plaintiff then filed his Revised Second Amended Complaint—which is the subject of this action—on December 13, 2017, and Defendants removed the action to federal court under 28 U.S.C. § 1331 that same day. Id., Ex. 6.

**III.     Legal Standard**

In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**IV.     Analysis**

**A. Plaintiff's CEPA Claims**

The Borough and the Police Department argue that Plaintiff's CEPA claims are futile because they are barred by the statute of limitations. They argue that Plaintiff is precluded from raising allegations prior to December 1, 2016—one year prior to the date Judge Farrington permitted him to restore his complaint—in support of his CEPA claims, and that there are no allegations concerning events subsequent to December 1, 2016 sufficient to support his claims. The Court agrees that Plaintiff's CEPA claims fail as to all Defendants.

### 1. Statute of Limitations

CEPA claims are subject to a one-year statute of limitations. N.J.S.A. § 34:19-5. That is, Plaintiff may only base his CEPA claims on events that occurred within one year of the date on which he initiated this legal action. In calculating the date on which the present action was initiated for statute of limitation purposes, the Court notes that "[a] statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice, as the original complaint is treated as if it never existed." Moore v. Middlesex Cty. Prosecutors Office, No. 16-3711, 2018 WL 2750237, at *3 (3d Cir. June 7, 2018) (quoting Brennan v. Kulick, 407 F.3d 603, 606 (3d Cir. 2005) (quotation marks omitted)). An exception to this general rule exists only "when a complaint is filed within the statute of limitations but is subsequently dismissed without prejudice in an order containing conditions for reinstatement within a specified time period," and when "the plaintiff meets those conditions." Moore, 2018 WL 2750237 at *3 (citing Brennan, 407 F.3d at 607).

Plaintiff filed his initial complaint in the state court action on March 6, 2017. But that complaint was dismissed without prejudice against all Defendants except Scott Mura on July 20, 2017, and in its entirety for failure to prosecute on September 22, 2017. Neither the July 20 Order nor the September 22 Order contained a condition for reinstatement within a specified period of time, so the exception noted in Moore does not apply. Rather, Plaintiff's complaint was restored—thus initiating the existing matter—on December 1, 2017 when Judge Farrington permitted him to file an amended complaint containing CEPA and NJCRA claims.

Plaintiff appears to concede that CEPA claims based on discrete events occurring prior to December 1, 2016 would be time-barred and premises his response solely on the continuing violation theory. Pl. Opp. Br. at 18-19, ECF No. 10. The continuing violation theory is "an equitable exception to the statute of limitations." Roa v. Roa, 200 N.J. 555 (N.J. 2010). It provides

that, where "an individual experiences a continual, cumulative pattern of tortious conduct," the limitations period may be tolled "until the wrongful action ceases." Id. Plaintiff contends that his allegation that he suffered "continual, severe, and pervasive" retaliation that "became constant as it was on a daily and weekly basis," RSAC ¶ 27, is sufficient to demonstrate that he experienced a continual, cumulative pattern of conduct in violation of CEPA. Pl. Opp. Br. at 19-20. But to establish a continuing violation, "a plaintiff must show that at least one discriminatory act occurred within the limitations period and that the discriminatory acts are part of a continuing pattern of discrimination rather than the 'occurrence of isolated or sporadic acts of intentional discrimination.'" Hall v. St. Joseph's Hosp., 343 N.J. Super 88, 101 (App. Div. 2001) (quoting Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 481 (3d Cir. 1997)). Plaintiff alleges no facts to support the claim that he experienced "continual" "retaliation" on a daily or weekly basis, or that a pattern of such conduct continued beyond December 1, 2016. He does not allege a single discriminatory act within the limitations period, see infra, and his remaining allegations consist of discrete events, months apart, based on conduct by different actors. See RSAC ¶¶ 28, 32, 48, 69-71, 96, 74, 76, 83-85, 87, 88. The Court rejects the applicability of the continuing violation theory to Plaintiff's claims and finds claims based on events occurring before December 1, 2016 barred by the statute of limitations.[3]

---

[3] Even if not time-barred, Plaintiff's allegations would be insufficient to state a claim for violations of CEPA. Plaintiff's RSAC is devoid of factual allegations that he suffered any change in his employment status or in the conditions of his employment, or that he faced harassment that was "severe and pervasive enough to make a reasonable person believe that the conditions of his employment were altered, and the working environment was hostile and abusive." RSAC ¶ 119. Indeed, Plaintiff is still employed by the Police Department and does not claim that he has been deprived of any promotional opportunities. Plaintiff's claims concerning the knife incident on January 26, 2016, the first internal affairs complaint filed by Mura on February 23, 2016, the "Order Detail" on March 26, 2016, and the reprimand for drinking coffee in public view while on traffic detail on June 22, 2016 are insufficient to demonstrate that Plaintiff faced a change in the conditions of his employment or that his working environment was hostile and abusive. Nor can

## 2. Failure to State a Claim

Plaintiff's factual allegations concerning events subsequent to December 1, 2016 are insufficient to support either of his CEPA claims. To state a claim for violations of CEPA, Plaintiff must show that (1) he reasonably believed the conduct he reported violated a law, rule, regulation, or clear mandate of public policy; (2) he performed a "whistle-blowing" activity described in N.J.S.A. § 34:19–3; (3) an adverse employment action was taken against him; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. Winters v. North Hudson Regional Fire and Rescue, 212 N.J. 67, 89 (N.J. 2012) (citation omitted). Plaintiff has satisfied the first two prongs of this test because he alleges that he reported conduct which he reasonably believed violated local ordinances and public policy. RSAC ¶¶ 21-23. However, he fails to satisfy the test because his allegations within the relevant period are insufficient to establish an adverse employment action.

An adverse employment action is one that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 257 (3d Cir. 2014). It is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998).

Plaintiff alleges three discrete events within the relevant period: (1) that on March 27, 2017, he was placed on paid administrative leave for four days pending the results of a health evaluation, (2) that on June 5, 2017, McMorrow "dr[ove] by [him] watching [him] and harassing [him] while

---

Plaintiff's denial of employment by a completely different entity constitute an adverse employment action by the Police Department.

[he] worked in an attempt to further intimidate [him]," and (3) that on June 21, 2017, McMorrow filed a new internal affairs complaint against Plaintiff accusing him of "'following her.'" RSAC ¶¶ 83-85, 87, 88.

Paid administrative leave is not an adverse employment action under either definition, particularly when the employee is suspended pending an investigation. Jones v. Southeastern Pa. Trans. Authority, 796 F.3d 323, 326 (2015) ("[S]uspension with pay, 'without more,' is not an adverse employment action" since it is "neither a refusal to hire nor a termination."). Nor is ordering an employee to submit to a health evaluation an adverse employment action. Carver v. City of Trenton, 420 F.3d 243, 256 (3d Cir. 2005) ("[O]rdering [plaintiff] to see a psychiatrist, without more, did not adversely affect his status as an employee.").[4] Nor is "dr[iving] by [him] watching [him] and harassing [him] while [he] worked in an attempt to further intimidate [him]," RSAC ¶ 87, an adverse employment action. See, e.g., Cokus v. Bristol Myers Squibb Co., 362 N.J. Super. 366, 382-83 (Law. Div. 2002), aff'd sub nom. Cokus v. Bristol Myers-Squibb Co., 362 N.J. Super. 245, (App. Div. 2003) (holding that allegations of staring, glaring, ignoring, and talking about an employee behind closed doors "neither create[] a hostile environment nor adverse action under CEPA."). Nor is filing an internal affairs complaint against him, RSAC ¶ 88, an adverse employment action. CEPA prohibits retaliatory action, and "an investigation of an employee is not normally considered retaliation." Beasley v. Passaic County, 377 N.J. Super. 585, 606 (App. Div. 2005); see also Borawski v. Henderson, 265 F. Supp. 2d 475, 486 (D.N.J.2003) ("Retaliatory action under CEPA is confined to 'completed . . . personnel actions that have an effect on either compensation or job rank.'") (quoting Hancock v. Borough of Oaklyn, 347 N.J.Super. 350, 360,

---

[4] Plaintiff argues that the principles articulated in Jones and Carver do not weigh in favor of dismissal of his claims since he has alleged "more" than simply his suspension. Pl. Opp. Br. at 22. For the reasons articulated below, Plaintiff has failed to articulate "more."

9

(App.Div. 2002)); Keelan v. Bell Communications Research, 289 N.J. Super 531, 539 (App. Div. 1996) ("The definition of retaliatory action speaks in terms of completed action. Discharge, suspension or demotion are final acts. 'Retaliatory action' does not encompass action taken to effectuate the 'discharge, suspension or demotion.'"). Because Plaintiff has failed to establish an adverse employment action,[5] his CEPA claims fail.

### B. Plaintiff's NJCRA Claim

Defendants also argue that Plaintiff's NJCRA claim fails because he has failed to allege any deprivation of his constitutional rights. The Court agrees.

In Count III, Plaintiff alleges that he "suffer[s] from anxiety and ha[s] a pre-existing speech impediment," and claims that the acts complained of in the RSAC "constitute[] differential and disparate treatment of Plaintiff on the basis of his condition." RSAC ¶ 125. Plaintiff claims that Defendants' actions have "deprived [him] of substantive due process and equal protection rights, privileges or immunities secured by the Constitution and laws of the United States and substantive rights, privileges or immunities secured by the Constitution and laws of this State" in violation of NJCRA. Id. ¶ 124.

---

[5] In addition, Plaintiff has failed to demonstrate a causal connection between his purported adverse employment action and his whistle-blowing. The documents attached to Plaintiff's own complaint demonstrate an independent basis for Plaintiff being placed on leave. See RSAC, Ex. C.
Moreover, A CEPA action may only be brought against an employer who retaliates against an employee, and McMorrow, as president of the Borough Council of Englewood Cliffs, is not Plaintiff's employer. N.J.S.A. § 34:19-3. Plaintiff argues that McMorrow may be held liable under CEPA because, as a legislator, she "regularly makes decisions which affect Plaintiff's employment, salary, benefits, job stability and job prospects." This argument is without merit. Plaintiff has not alleged that McMorrow acted on behalf of the Police Department or that she has the capacity to direct or control Plaintiff's work. See N.J.S.A. § 34:19-2(a); id. 19-2(d).

The NJCRA cannot serve as the basis for a claim that alleges violations of equal protection rights on account of disability.[6] Accordingly, Plaintiff has failed to allege a violation of his equal protection rights under the NJCRA. Further, Plaintiff does not identify any substantive due process right that he claims has been violated. Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 363 (1996) (noting that in a § 1983 action, a plaintiff must "identify a 'right, privilege or immunity' secured to the claimant by the Constitution or other federal laws of the United States."). Rather, his RSAC simply restates the literal language of the NJCRA and concludes, without any factual basis, that his rights under the law have been violated. Compare RSAC ¶¶ 124-25 with N.J.S.A. 10:6-2. As Count III lacks any factual basis, it cannot go forward.

### C. Plaintiff's Claims Against John Does

Plaintiff also brings this action against John Does 1-10. Nowhere in the RSAC does he identify who these individuals may be or any actions they allegedly took against him. Accordingly, his claims against the John Doe defendants are dismissed. See Horne v. Mercer Cty. Corr. & Med. Staff, No. 13-6543, 2014 WL 2168036, at *3 n. 4 (D.N.J. May 23, 2014) ("It is not sufficient merely to add 'John Does' to the list of defendants; Plaintiff must, in the body of the Complaint, make factual allegations describing the John Doe defendants and their actions."); Kates v.

---

[6] The NJCRA was modeled after 20 U.S.C. § 1983, and "has repeatedly [been] interpreted . . . analogously to § 1983." Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443 (D.N.J. 2011); Perez v. Zagami, 218 N.J. 202, 212 (2014) ("The legislative history is replete with references that the [NJ]CRA was intended to provide New Jersey citizens with a state analogue to Section 1983 actions."); Ramos v. Flowers, 429 N.J. Super. 13, 22-23 (App. Div. 2012) (applying § 1983 analysis to a cause of action brought under the NJCRA). Section 1983 cannot be used to seek relief for violations of a federal law—like the Americans with Disabilities Act ("ADA")—with its own remedial scheme; allowing such claims to go forward would frustrate that remedial scheme. Williams v. Pa. Human Relations Comm., 870 F.3d 294, 297-98 (3d Cir. 2017) (holding that disability discrimination in employment claims under § 1983 are precluded by the ADA); Okwu v. McKim, 682 F.3d 841 (9th Cir. 2012) (same). Consequently, an NJCRA claim predicated on allegations of disability discrimination cannot go forward as such a claim would frustrate the remedial schemes of the ADA and the New Jersey Law Against Discrimination ("NJLAD").

Bridgeton Police Department, No. 10–6386, 2011 WL 6720497, *1 n. 1 (D.N.J. Dec. 21, 2011) ("Plaintiff's failure here to allege . . . any facts suggesting a basis for liability requires dismissal of all claims against unnamed fictitious defendants for failure to state a claim"); Beale v. Department of Justice, No. 06–2186, 2007 WL 327465, *8 (D.N.J. Jan. 30, 2007) (same); Smith v. Creative Resources, Inc., No. 97–6749, 1998 WL 808605, *1 n. 2 (E.D.Pa. Nov. 23, 1998) (same).

## V.  Conclusion

For the reasons stated above, Defendants' motions to dismiss, ECF Nos. 5, 6, and 7 are **GRANTED**.  Plaintiff's Revised Second Amended Complaint is dismissed and this case is closed. An appropriate order accompanies this opinion.

**Dated: August 30, 2018**

*/s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**United States District Judge**